# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MIGUEL ANGEL ALBARRAN, | ) | 1:08-CV-01703 JMD HC |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGEMENT |
| THOMAS DE SANTOS, | ) ) | |
| Respondent. | ) ) ) | ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Miguel Angel Albarran ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is currently in the custody[1] pursuant to a jury verdict in June 28, 2007, finding Petitioner guilty of driving under the influence of alcohol (Cal. Veh. Code § 23512(a)) and driving with a blood alcohol level of .08% or greater (Cal. Veh. Code § 23152(b)). (Answer at 1; Pet. at 2.) Petitioner was sentenced to three years probation. (Pet. at 2.)

Petitioner appealed his conviction to the Appellate Department of the Kings County Superior Court of California ("Appellate Department"). The Appellate Department issued a reasoned opinion on November 19, 2007, affirming Petitioner's conviction. (*See* Lod. Doc. 3.)

Petitioner then filed a petition for writ of habeas corpus to the California Supreme Court, which was denied by the California Supreme Court. (*See* Lod. Docs. 4, 5.)

---
[1] A habeas petitioner is "in custody" for the purposes of habeas jurisdiction while he remains on probation. *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005).

On November 16, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.

On August 3, 2009, Respondent filed a response to the petition. Petitioner filed a traverse to the answer on August 31, 2009.

Consent to Magistrate Judge Jurisdiction

On November 12, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to have a magistrate judge conduct all further proceedings, including the entry of final judgment. (Court Doc. 5.) Respondent consented to the jurisdiction of a magistrate judge on June 18, 2009. (Court Doc. 11.) On May 12, 2010, the case was reassigned to the undersigned for all further proceedings. (Court Doc. 23.)

# **FACTUAL BACKGROUND**

*Prosecution Evidence*

Joseph Richardson was driving out of Lemoore Naval Air Station on September 8, 2006 at approximately 3:30 a.m. when he noticed a smashed up Honda lying in a ditch. (RT at 268-269.) Mr. Richardson left his vehicle, looked inside the Honda and noticed no one inside. (Id. at 269.) As he was about to return to base to report the accident, Mr. Richardson heard a voice and encountered Petitioner wandering nearby. (Id.) Petitioner told Mr. Richardson that Petitioner had been in the back of the vehicle sleeping. (Id. at 270-271.) Mr. Richardson had observed that there were two child seats in the back, with one in the middle and the other next to it. (Id. at 271.)

A military police officer, dispatched to the scene of the accident, testified that the car was still warm to the touch, indicating the accident occurred within ten to fifteen minutes of when the officer arrived at the scene. (Id. at 300-301.) Petitioner had a bruise or rash type injury that appeared to be from a seatbelt, going from Petitioner's left shoulder to his right stomach. (Id. at 283.) When the military police asked Petitioner what happened Petitioner kept asking about the whereabouts of his two friends. (Id. at 284.) Six military patrol officers conducted a search to look for other people but found no one. (Id. at 284-285.) The officer also testified that given Petitioner's size, he would not have fit in the back seat of the vehicle along with the two car seats. (Id. at 286-287.)

\\\

\\\

California Highway Patrol officers were also dispatched to the scene of the accident. (Id. at 305.) One of the officers testified that in Petitioner's account of the accident, Petitioner said he had been laying across the back seat of the car and woke up during the collision. (Id. at 307.) Petitioner also relayed to the officer that he was the registered owner of the vehicle. (Id.) The officer's examination of the car revealed two large car seats in the rear of the vehicle, separated only by an arm rest. (Id. at 309, 332-333). Both Highway Patrol officers noted that there was blood on the driver's side air bag, the driver's seat, and on the driver's side seatbelt. (Id. at 310, 329). There was no blood on the passenger side air bag. (Id.) One of the Highway Patrol officers testified that there was quite a lot of blood on Petitioner from injuries suffered to his head and arms. (Id.) The officer observed that Petitioner had an abrasion that went from his left side collar bone, extending diagonally across his chest. (Id. at 311). The officer testified that his search of the area did not reveal the presence of anyone else. (Id. at 320).

The parties stipulated that Petitioner had his blood tested and that the test was positive for alcohol in Petitioner's system greater than .08 percent by weight. (Id. at 312).

*Defense Evidence*

Petitioner testified in his own defense. Petitioner testified that on the evening prior to the accident, Petitioner and Arturo Flores went to a bar in Visalia. (Id. at 344). Petitioner met two men at the bar and offered them a ride home after it appeared the two men were stranded when their driver left. (Id. at 346-347.) Petitioner testified that one of the two men was chosen as the designated driver after Flores decided to stay in Visalia. (Id. at 347). Petitioner testified that he had consumed four or five beers by the time he got inside the vehicle to go home. (Id. at 348.) Petitioner contends that he fell asleep during the car ride and the next time he regained consciousness was after the car accident. (Id. at 348.) Petitioner alleges that by the time he woke up, everyone else had exited the vehicle. (Id.) On cross examination, Petitioner admitted that the keys to the vehicle were found in his pocket. (Id. at 356). Petitioner confirmed that no one else was present at the scene when Mr. Richardson and the military police arrived at the scene. (Id.)

Petitioner's sister, Annabel Vargas, testified on Petitioner's behalf. (Id.) She testified that she arrived at the hospital after receiving a call informing her that her brother was in a car accident.

(Id. at 360). She testified the call came between five and six in the morning. (Id. at 362). She also testified that Petitioner was released from police custody at around one in the afternoon. (Id. at 361.) Ms. Vargas testified that after he was released, Petitioner showed his family his chest and that she did not observe any bruises. (Id. at 362).

Arturo Flores, Ms. Vargas' boyfriend, testified that he was with Petitioner the night of September 7th. (Id. at 366). Mr. Flores also testified that Petitioner got in the back seat of the vehicle when he left with two other men. (Id. at 367-368).

## DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. As Petitioner's custody arose from a conviction in the Kern County Superior Court, (Pet. at 2.), and Kern County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision

denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition since Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'"). As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court

making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Appellate Department and the California Supreme Court were the only courts to have adjudicated Petitioner's claims. As the California Supreme Court denied Petitioner's claims on procedural grounds, the Court looks through this decision to the last reasoned decision; namely, that of the Appellate Department. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III. Review of Petitioner's Claims

The petition for writ of habeas corpus has a sole ground for relief–namely, Petitioner contends that there was insufficient evidence to support the jury's finding that he was driving under the influence of alcohol and that his blood alcohol level was greater than .08% at that time. In

addition to challenging the merits of this claim, Respondent alleges that Petitioner's claim is procedurally defaulted.

### 1. *Merits of Claim*

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting that under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson v. Virginia*, 443 U.S. 307 (1979) was objectively unreasonable). In *Jackson*, the Supreme Court cited to its previous holding in *In re Winship*, 397 U.S. 358, 364 (197) in stating that, "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Thus, a habeas relief is afford a state prisoner where no rational trier of fact could have found proof beyond a reasonable doubt based on the evidence adduced at trial. *Jackson*, 443 U.S. at 324; *see McDaniel v. Brown*, 130 S. Ct. 665, 666 (2010) (per curiam).

Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). As the Ninth Circuit Court of Appeals noted in *Bruce v. Terhune*, 376 F.3d 950 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319), "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution.'" Where the record supports conflicting inferences, a federal habeas court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Additionally, a jury's credibility determination is "entitled to near-total deference under *Jackson*," *Bruce*, 376 F.3d at 957, as assessing the credibility of witnesses is generally beyond the scope of a *Jackson* review, *Schlup v. Delo*, 513 U.S. 289, 330 (1995). Lastly, a federal habeas court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption

of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to a state court's determinations of legal questions or to mixed questions of law and fact, the state court's factual findings underlying those determinations are entitled to the same presumption. *Sumner v. Mata*, 455 U.S. 539, 597 (1981).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n.16. Petitioner was convicted of violating California Vehicle Code section 23152 (a) which makes it unlawful for "any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle." The substantive elements of this crime requires that Petitioner was under the influence of alcohol, that Petitioner drove while under the influence of alcohol, and that Petitioner's driving ability was actually impaired by the alcohol. *See People v. Torres*, 173 Cal.App.4th 977, 983 (Cal. Ct. App. 2009). Here, the Appellate Department's denial of Petitioner's claim contained a thorough examination of the evidence as it pertained to these substantive elements.

The Appellate Department's decision first examined evidence that Petitioner was the driver of the car. Among the evidence relied upon by the Appellate Department was evidence contradicting Petitioner's version of events, such as the absence of anyone else in the vicinity of the accident and the presence of two car seats right next to each other in the back of the car making it impossible for Petitioner to have been laying in the back. (Lod. Doc. 3 at 1-2.) Additionally, the Appellate Department found probative the fact that Petitioner has sustained a head injury from which he was bleeding and the presence of blood on the driver's seat area but not on the passenger side or the back of the vehicle. (Id.) Furthermore, the Appellate Department noted that the abrasions suffered by Petitioner were consistent with being on the driver's side of the car and that Petitioner admitted he climbed out of the driver's side when he exited the car Petitioner was the registered owner of the vehicle. (Id.) Lastly, the Appellate Department also pointed to Petitioner's status as the registered owner of the vehicle and Petitioner's possession of the ignition keys in his front pocket after the accident. The Court finds such evidence to be more than sufficient to permit a reasonable trier of

fact to conclude that Petitioner was the driver of the vehicle.

The Appellate Department then examined the substantial evidence that Petitioner was intoxicated and that his alcohol consumption impaired his ability to drive, including evidence that the vehicle had ran off the southern edge of the freeway, collided with a traffic sign, crossed the freeway again, collided with a second sign, then hit a barbed wire fence and overturned before coming to a rest. (Lod. Doc. 3 at 2.) It is reasonable to infer that such an accident is the result of impaired driving. Furthermore, the Appellate Department noted that the highway patrol officers testified that Petitioner smelled of alcohol and Petitioner's eyes were red and watery. More importantly, the parties had stipulated at trial that Petitioner's blood alcohol test was greater than .08%, and Petitioner himself admitted that he had drunk four to five beers prior to the accident. (Id.) While Petitioner contends that there was no date or time specifically assigned to the test, sufficiency of the evidence requires that the court take all reasonable inferences in favor of the verdict. Here, Petitioner's intoxication could be inferred from Petitioner's admission that he was drinking before the accident, the testimony that Petitioner smelled of alcohol and had blood shot eyes immediately after the accident, and that Petitioner blood alcohol was greater than .08% after the accident.[2] A reasonable juror could likewise infer from the car accident, namely the fact that the car veered off the freeway, and the amount of alcohol in Petitioner's system that the alcohol impaired his ability to drive. Thus, the Court finds that such evidence would permit a reasonable trier of fact to conclude that Petitioner was intoxicated while driving and that this lead to his accident.

Petitioner was also convicted of violating section (b) of California Vehicle Code section 23152, which prohibits "any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." Section 23152(b) contains a rebuttable presumption that a person has a .08% blood alcohol level while driving if that person's blood was tested within three hours of the driving and it shows that the person had a blood alcohol level of .08% or greater. The Appellate

---

[2] The Court notes the inference that Petitioner's blood alcohol level was even greater than .08% would be supported by the test regardless of when it occurred as there is no dispute that the test occurred after the accident. Generally blood alcohol levels decreases with time, thus leading to the conclusion that as long as Petitioner's test was after the accident, his blood alcohol level was greater than .08% at the time of the accident unless there is additional consumption of alcohol after the accident. Considering Petitioner was in the hospital for this period of time, the Court greatly doubts that this was the case.

Department's opinion discussed in depth the substantial evidence that Petitioner has a blood alcohol level greater than .08% by weight. (Lod. Doc. 3 at 2.) The Appellate Department noted that the parties had stipulated at trial that Petitioner blood was tested and the results were greater than .08%. (Id.) Petitioner admitted to consuming four to five beers prior to the accident. The Appellate Department also relied upon the rebuttable presumption contained in section 23152(b). Petitioner challenges the Appellate Department's reliance on the blood test and the rebuttable presumption, again arguing that as there is no specific date and time on the test, that the test cannot be probative of his having a .08% blood alcohol weight at the time he was driving. However, the Appellate Department found that the time line presented at the trial supported applying the rebuttable presumption. The testimony revealed that the accident occurred around 3:30 am as witnesses testified they arrived at the scene at that time and that the vehicle's hood was still warm to touch when they arrived. Petitioner was taken to the hospital around between five and six in the morning and was taken into custody during that time. A reasonable juror could have inferred that the drug test occurred sometime between five and six in the morning, which was less than three hours from the time of the car accident and when Petitioner had been driving. Thus, a reasonable juror would have found sufficient evidence upon which to apply the presumption and upon which to convict Petitioner of violating section 23152(b). Consequently, the Court finds that the Appellate Department's decision was not an objectively unreasonable application of *Jackson* and that Petitioner is not entitled to habeas corpus relief on this ground.

### 2. *Procedural Default*

Even if Petitioner's claim contained merit, Petitioner could not obtain habeas relief as his claim is procedurally defaulted. A claim is considered procedurally defaulted where the state court invokes a state procedural rule, which is adequate to support the judgment and independent of federal law, to reject a federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). A state procedural rule is adequate if the rule is sufficiently clear at the time of the default. *Ford v. Georgia*, 498 U.S. 411, 423 (1991). Additionally, the rule must be "firmly established and regularly followed" by the state court in order to constitute an adequate procedural bar. *Id*. at 424-425 (finding that rule announced at time of procedural default is not firmly established); *see Wood v. Hall*, 130 F.3d 373,

377 (9th Cir. 1997) (stating that a rule is inadequate where the rule is selectively applied, ambiguous, or unsettled in the state and is not inadequate merely because the rule entails the exercise of judicial discretion); *see also Hill v. Roe*, 321 F.3d 787, 790 (9th Cir. 2003). A procedural rule is independent if it is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983); *see Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (quoting *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. at 1041)) ("[f]ederal habeas review is not barred is the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law'").

"[P]rocedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). The fact that the State court went on to reach the merits of the case does not erase the procedural bar. *See id*. at 264 n.10 (stating that, "a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

As procedural default is an affirmative defense, Respondent bears the burden of pleading and proving that the state procedural bar is adequate and independent while Petitioner bears the interim burden of placing the adequacy of the defense at issue. *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003). Respondent has met that burden by pleading that this claim is procedurally defaulted, citing the California Supreme Court's denial of the claim with citation to *In re Lindley*, 29 Cal.2d 709 (1947) and *In re Waltreus*, 62 Cal2d 218 (1965). As noted by both Respondent and Petitioner *Lindley* and *Waltreus* concern California's procedural bar against bringing sufficiency of the evidence claims on collateral review as opposed to direct review. (Traverse at 5-7; Answer at 6-7.) Respondent further cites to *Carter v. Giurbino*, 385 F.3d 1194, 1197-1198 (9th Cir. 2004), for the proposition that this rule is independent and adequate. The Ninth Circuit in *Carter*, found that the *Lindley* rule "is not intertwined with federal substantive or procedural law," and is therefore an independent state ground. *Id*. at 1197. The *Carter* court similarly found that "the California courts

have consistently applied *Lindley* since 1947," thereby making the rule adequate. *Id*. at 1198.

As Respondent has met the burden of pleading and proving the procedural bar is adequate and independent, the burden now shifts to Petitioner to place the adequacy of the rule into question as "the scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner." *Bennett*, 322 F.3d at 584-85. Petitioner argues that the rule is not consistently applied as to misdemeanor convictions, stating that "to the best of petitioner's knowledge through his counsel, the California Supreme Court has never applied the rule to misdemeanants." (Traverse at 6). Petitioner's citation to *In re Wallace*, 3 Cal.3d 289, 292-293 (Cal. 1970), *In re Catalano*, 29 Cal.3d 1, 7 n. 7(Cal. 1981), and *In re Brown*, 9 Cal.3d 612, 624-625 (Cal. 1973) as evidence that the California courts do not consistently apply the rule, requiring sufficiency of the evidence claims to be brought on direct review, is unavailing. The *Brown* decision concerned whether existing California law conformed with the First Amendment, and it was only after revising the existing law did the California Supreme Court find that evidence at trial was not sufficient under the newly interpreted law. *Brown*, 9 Cal.3d at 622-625. The *Brown* court noted that writ of habeas corpus are available where the trial court acted in excess of its jurisdiction and that a defendant is entitled to habeas relief if the statute under which he was convicted did not prohibit his conduct. *Id*. at 624-625. Similarly, *In re Catalano*, 29 Cal.3d at 9-10, concerned whether "a defendant is entitled to habeas corpus if the trial record, without material factual dispute, demonstrates that the statute under which he was convicted did not prohibit his conduct." As noted by the California Supreme Court's decision in *In re Wallace*, the issue before it concerned whether the statute upon which the defendants had been convicted did not prohibit their conduct as there was no material dispute of fact. *In re Wallace*, 3 Cal.3d at 293. Thus, unlike Petitioner's case, the above mentioned cases concerned whether the statutes as interpreted would compel a conviction where there was no material dispute of fact and are thus not sufficiency of the evidence claims. Additionally, the Court's review of the existing case law finds at least one instance of this rule having been applied to a misdemeanor and of the federal habeas court upholding the procedural bar to a misdemeanor conviction. *See Remmert v. Fox*, 2009 WL 839050, * (N.D. Cal. 2009) (holding *Lindley* procedural bar, invoked by California Court of Appeal, bars federal habeas review of sufficiency of evidence claim for two misdemeanor

counts of putting a child risk and one misdemeanor count of violating a court order). As Petitioner has failed to satisfy his interim burden under *Bennett,* the Court concludes that the *Lindley* rule rests on an adequate and independent state procedural ground.

A federal habeas court is barred from reviewing Petitioner's claim unless Petitioner can demonstrate cause and actual prejudice or that failure to review Petitioner's claims is necessary to avoiding a miscarriage of justice. *Coleman*, 501 U.S. at 725; *Bradshaw v. Richey*, 546 U.S. 74, 79-80 (2005). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (finding cause is established by ineffective assistance of counsel); *see Stickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (finding cause where the failure to raise a claim resulted from conduct attributable to the prosecutor that impeded trial counsel's access to the factual basis for the claim); *see also McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991) (finding that objective factors that may constitute cause include interference by officials that would make assertion of the claim impracticable, a showing that the factual or legal basis for the claim was not reasonably available, or constitutionally ineffective assistance of counsel under the Sixth Amendment). Here, Petitioner's traverse does not offer any cause for failing to raise the sufficiency of the evidence claim on direct review rather than on collateral review; thus, Petitioner has failed to establish cause.

As Petitioner has not established cause for his failure to object, the Court need not consider whether Petitioner can demonstrate that he would be prejudiced by the procedural default. *McCleskey*, 499 U.S. at 502 (citing *Murray*, 477 U.S. at 494); *see also Smith v. Murray*, 477 U.S. 527, 533-534 (1986) (noting that the court need not determine whether a petitioner had suffered prejudice as it was "self-evident" that the petition had not demonstrated cause); *see also Cook v. Schriro*, 538 F.3d 1000, 1028 n. 13 (9th Cir. 2008) (citing to *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982) for the proposition that a court need not consider whether a petitioner suffered actual prejudice where the petitioner cannot show cause), *cert. denied*, 129 S. Ct. 1033 (2009). Even if Petitioner has established cause, the Court finds that as Petitioner does not prevail on the merits of the claim, any claim of prejudice fails.

"Even if a state prisoner cannot meet the cause and prejudice standard, a federal court may hear the merits of [a defaulted claim] if the failure to hear the claim[s] would constitute a 'miscarriage of justice.'" *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (reiterating exception for fundamental miscarriage of justice but noting that exception is explicitly tied to petitioner's innocence). Thus, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule, however, [Petitioner] must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). Here, Petitioner has not produced evidence that would permit this Court to reach such a conclusion. Considering the plentiful evidence against Petitioner, discussed *supra*, the Court finds the argument that Petitioner is actually innocent futile. Consequently, the Court finds that Petitioner's claim is procedurally defaulted and federal review of the claim is foreclosed.

## IV.     Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040. Here, the Court finds that reasonable jurists would not disagree with the Court's denial of Petitioner's habeas claim as the decision is neither debatable nor wrong. Petitioner's contention that the Appellate Department's decision was an objectively unreasonable application of *Jackson* is patently without merit, as is Petitioner's substantive claim that his verdict

was not supported by sufficiency of the evidence. Thus, the Court strongly believes that Petitioner's claims are not deserving of encouragement to proceed further. Consequently, the Court finds that Petitioner has failed to make the requisite showing that he was denied a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:    May 19, 2010**                              /s/ John M. Dixon
UNITED STATES MAGISTRATE JUDGE